FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

02 JUL 10 PM 2:39

U.S. DISTRICT COURT
N.D. OF ALABAMA

TOMMIE GASTON,            )
                          )
    Plaintiff,             )
                          )
vs.                       )   Civil Action No. CV-00-S-1391-NW
                          )
FEDERAL KEMPER LIFE ASSURANCE CO., )
                          )                ENTERED
    Defendant.             )

**MEMORANDUM OPINION**                    JUL 10 2002

    Plaintiff, Tommie Gaston, sued defendant, Federal Kemper Life Assurance Company, alleging breach of contract, bad faith, and promissory fraud, based upon defendant's refusal to pay death benefits under a life insurance policy issued to plaintiff's deceased wife.

    This action now is before the court on defendant's motion for summary judgment.[1] Federal Rule of Civil Procedure 56(c) provides, in part, that summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).

---

[1]Doc. no. 30.



> In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment.
>
> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)) (internal quotation marks and citations omitted); *see also United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc).

Upon consideration of the pleadings, evidentiary submissions, and briefs, this court concludes that defendant's motion for summary judgment is due to be granted.

## I. SUMMARY OF FACTS

During the Fall of 1997, Judy Gaston submitted an application for issuance of a $50,000 life insurance policy to defendant, Federal Kemper Life Assurance Company. Mrs. Gaston then was 57 years old. She answered "yes" to all of the following questions on defendant's application form:

> 7.  Have you ever had or have you ever been treated for: chest pain, high blood pressure, stroke, diabetes, cancer; a disease or disorder of the heart, lungs, digestive or genitourinary system; or a mental or nervous disorder?
>
> . . .
>
> 11. In the past five years have you been hospitalized or consulted a physician? (List all occurrences below.)
>
> 13. Are you currently taking or have you been advised to take any medication? (List reason and medication below.)[2]

The application form instructed applicants to submit "details" for each question answered affirmatively. Mrs. Gaston explained that, during the preceding two years, she had been treated for

---

[2] Doc. no. 32, Exh. 3.

high blood pressure, but that, with treatment, her blood pressure then was normal. She included the name of (and contact information for) her treating physician.[3] Significantly, Mrs. Gaston did not mention the fact that she had scleroderma, or that she had been treated recently for that condition.

After receiving the application, defendant conducted a para-medical examination, during which Mrs. Gaston's blood pressure was checked and found to be in the normal range. Thus, in accordance with its guidelines for underwriting, defendant issued the policy to Mrs. Gaston without obtaining a statement from her attending physician.[4] Mrs. Gaston's husband, plaintiff herein, was named as beneficiary of the policy.

Defendant's underwriting guidelines for obtaining an attending physician's statement for a life insurance policy with a benefit of $50,000 state:

> An APS [attending physician's statement] is NOT usually needed for the following medical histories . . . HYPERTENSION: If application and/or exam indicate that blood pressure has been controlled for a period of time, paramed exam readings are within normal limits, all other risk factors are favorable, and not a large IDB [individual death benefit], OK preferred without APS for hypertension history.[5]

These same guidelines state that an attending physician's statement should be obtained if the applicant indicates that he or she had been treated for scleroderma. As previously noted, however, Mrs. Gaston did not reveal either that she had scleroderma, or that she had been recently treated for that condition. Consequently, defendant did not request a statement from the attending physician listed on Mrs. Gaston's application, Dr. John Scarborough, or any other physician. Mrs. Gaston's medical records demonstrate that her scleroderma was a serious health risk.

---

[3] *Id.*
[4] *Id.*, Exh. 29.
[5] *Id.*

-3-

Plaintiff contends, without citation to Mrs. Gaston's medical records, that her scleroderma was "limited." For this proposition, plaintiff cites a medical article, submitted by defendant in support of its motion for summary judgment, which states:

> Scleroderma tends to be a monophasic disease that rarely relapses after remitting. The initial phase is active inflamation and is associated with progressive fibrosis of the skin and other organs; it lasts from several months to several years. As the disease activity remits, patients encounter a variety of complications resulting from skin and internal organs fibrosis. The degree of skin involvement predicts the subsequent course of events. [Table omitted] Patients with diffuse scleroderma (arms, legs, and trunk) have a worse prognosis than those with limited scleroderma (distal arms and legs only). Patients with limited disease have normal life expectancies, with the exception of those who develop severe isolated pulmonary hypertension (approximately 10%). In contrast to the CREST syndrome,[6] patients with diffuse scleroderma have a rapid progression of skin disease over several months to involve the fingers, hands, arms, trunk, and legs with thickened, immobile skin. In concert with skin disease, patients with diffuse scleroderma frequently develop signs of pulmonary, musculoskeletal, gastrointestinal, cardiac, and renal dysfunction, some of which may lead to organ failure and/or death.[7]

On the date Mrs. Gaston completed her application for insurance, she had been diagnosed with "scleroderma calcinosis universalis"[8] and Raynaud's syndrome.[9] Her attending physician noted that she had "atrophic appendages and thin, tight skin over her chest, sternum and fingers."[10] She had high blood pressure[11] and mild, but chronic, kidney insufficiency.[12]

---

[6] "CREST is an acronym for calcinosis, Raynaud's phenomenon, esophageal dysfunction, sclerodactyly, and telangiectasia. It is a variant of the two groups of scleroderma, localized and systemic. CREST is a relatively stable and slow-moving form of scleroderma and has a much more favorable prognosis than other forms. There is no evidence that the basic process differs from the usual scleroderma, but the tempo of CREST seems to be different in that visceral involvement comes slower and later in the course of the disease." American Autoimmune Related Diseases Ass'n, *CREST Syndrome* <http://www.aarda.org/page13.html>.

[7] Doc. no. 29, Exh. 26, p. FK0353 (footnote added).

[8] *Id.*, Exh. 18 (Office Notes from 12/1/93).

[9] *Id.* (Office Notes of 3/22/94; 2/9/95)

[10] *Id.* (Office Notes of 12/14/94)

[11] *See Id.* (Office Notes of 4/11/95; 10/2/97)

[12] *See Id.* (Office Notes of 8/9/95; 10/2/97)

Mrs. Gaston died on August 5, 1999. The cause of death was listed as a "pulmonary emboli," but scleroderma was listed on the death certificate as a "condition[ ] contributing to [her] death."[13]

The life insurance policy issued to Mrs. Gaston contained a contestability clause, which stated:

> We rely on the statements made in the application for this policy. . . . In the absence of fraud, they are deemed representations and not warranties. In addition to the other reasons permitted by law, we can contest the validity of . . . this policy . . ., if:
>
> a.   any material misrepresentation of fact is made in the application . . . ; and
>
> b.   a copy of that application . . . is attached to this policy when issued . . . .
>
> We will not contest the validity of this policy with respect to the Initial Specified Amount after this policy has been in force, during the insured's life, for 2 years from the Date of Issue.[14]

Defendant undertook to investigate plaintiff's claim for death benefits under this contestability clause because Mrs. Gaston's death occurred less than two years after the policy was issued.

During its investigation, defendant discovered that Mrs. Gaston suffered from scleroderma. It determined that Mrs. Gaston "had a long history . . . of scleroderma."[15] It further determined, based on a review of Mrs. Gaston's medical records, that her scleroderma "was of the CREST variety with at least four of the five criteria: subcutaneous calcinosis [(C)], Raynaud's phenomenon (R), esophageal dysfunction (E), and telang[i]ectasia (T)."[16] Defendant's medical director, Gary Graham, M.D., stated:

> There can be multiple organ system involvement including renal and respiratory systems. She had mild renal insufficiency diagnosed before out application. This

---

[13] *See Id.*, Exh. 5.

[14] *See Id.*, Exh. 31, p. 6.

[15] *Id.*, Exh. 26, p.1.

[16] *Id.*; *see also supra* note 6 for definition of "CREST."

-5-

was known to her as she had collected 24 hour urine specimen for evaluation of renal function on more than one occasion. Her pulmonary disease probably became manifest after our application and the PFT's showed restrictive defect with possible underlying pulmonary hypertension.

Had we known of her scleroderma with CREST syndrome, she would not have been issued as applied for. We would have obtain[ed] medical records and based on those would have either issued a highly rated policy or declined.[17]

Based on Dr. Graham's report, the application, and Mrs. Gaston's medical records, Lyn Patterson, defendant's Chief Underwriter, determined that Mrs. Gaston's application contained material misrepresentations and that, had Mrs. Gaston's true medical history been known, defendant would not have issued the policy. Considering the opinions of Graham and Patterson, Mary Beth Jachec, a claims manager, determined to deny plaintiff's application for benefits under the life insurance policy at issue. On January 6, 2000, defendant sent a letter to plaintiff rescinding the contract based on the alleged material misrepresentations on the application form submitted by his deceased wife. Defendant also enclosed a check for $657.60, in reimbursement of the premiums paid on the policy.

Thereafter, plaintiff filed this action against defendant, alleging promissory fraud, breach of contract, and bad faith refusal to pay a valid insurance claim.

## II. DISCUSSION

### A.     Promissory Fraud

Plaintiff has not presented any evidence or argument in opposition to defendant's motion for summary judgment on his promissory fraud claim. The court therefore finds that plaintiff has abandoned the claim. Issues and contentions not raised in a party's brief are deemed abandoned. *See, e.g., Chapman v. AI Transport* 229 F.3d 1012, 1027 (11th Cir. 2000) (en banc) ("Parties

---

[17]*Id.*

opposing summary judgment are appropriately charged with the responsibility of marshaling and presenting their evidence before summary judgment is granted, not afterwards."); *Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994) (holding that a district court can "properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment") (citing *Lazzara v. Howard A. Esser, Inc.*, 802 F.2d 260, 269 (7th Cir. 1986) (holding that a ground not pressed in opposition to a motion for summary judgment is be treated by the district court as abandoned)). *Cf., e.g., Lucas v. W.W. Grainger, Inc.* 257 F.3d 1249, 1255 n.1 (11th Cir. 2001) ("Lucas has abandoned his unlawful harassment claim by not raising it in his initial brief on appeal.") (citing *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1317 n.17 (11th Cir. 1999) ("Issues that are not clearly outlined in an appellant's initial brief are deemed abandoned.") (citations omitted)); *Hartsfield v. Lemacks*, 50 F.3d 950, 953 (11th Cir. 1995) ("We note that issues that clearly are not designated in the initial brief ordinarily are considered abandoned.") (quotation marks and citation omitted); *Marek v. Singletary*, 62 F.3d 1295, 1298 n.2 (11th Cir. 1995) ("Issues not clearly raised in the briefs are considered abandoned."); *Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989).

### B. Breach of Contract

Defendant contends that it acted within its rights when rescinding the life insurance contact issued to Mrs. Gaston due to her misrepresentations regarding her prior treatment for scleroderma and related health problems. In this regard, Alabama law provides that:

> (a) All statements and descriptions in any application for an insurance policy or annuity contract, or in negotiations therefor, by, or in behalf of, the insured or annuitant shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery under the policy or contract unless either:

       (1) Fraudulent;

       (2) Material either to the acceptance of the risk or to the hazard assumed by the insurer; or

       (3) The insurer in good faith would either not have issued the policy . . . or would not have issued a policy . . . at the premium rate as applied for, or would not have issued a policy . . . in as large an amount or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been made known to the insurer as required either by the application for the policy . . . or otherwise.

Alabama Code § 27-14-7(a) (1975) (1998 Replacement Vol.). Plaintiff contends that defendant is not entitled to rely upon the foregoing statute, because: (1) Mrs. Gaston was not asked whether she had scleroderma; and (2) defendant did not contact her treating physician, thus waiving its right to rescind that contract based on a misrepresentation.

    The court will not spend time or effort addressing plaintiff's first ground of opposition. Plaintiff is correct that Question 7, which lists a number of diseases and disorders, does not specifically seek information regarding scleroderma.[18] Even so, Question 11 (which asks about "all occurrences" in which the applicant has been hospitalized or consulted a physician) and Question 13 (which asks for all medicines the applicant is currently taking, and the reason for such medications) are not limited to the diseases listed in Question 7; rather, these questions seek information regarding medical treatment for any disease or disorder. Plaintiff's contention that there has been not a misrepresentation because Mrs. Gaston was never specifically asked about scleroderma is not supported by the record.

    Plaintiff's second argument, that defendant has waived any misrepresentation, also is without merit. Plaintiff contends that defendant had "sufficient indications to put [it] on notice of [Mrs.

---

[18] Doc. no. 32, Exh. 3.

Gaston's] health problems or false answers."[19] He argues, "a jury must determine if the 'indications' of ill health were sufficient to put [defendant] on notice that it needed to investigate Mrs. Gaston's medical condition by using the money 'tools' at its disposal."[20]

As set forth above, Mrs. Gaston recorded on her application that she had hypertension, but added that the condition was controlled by medication. During the paramedical examination, Mrs. Gaston's blood pressure was normal. Based on defendant's underwriting procedures, it did not contact Mrs. Gaston's treating physician, because the policy amount was small, Mrs. Gaston had stated her blood pressure was controlled by medication, and her blood pressure in fact was within the normal range when tested during the paramedical examination. Thus, considering these facts, the issue is whether defendant should had "sufficient indications" that it needed to contact Mrs. Gaston's treating physician — a step which, if taken, would have revealed her treatment for scleroderma. In that regard, Alabama courts have

> consistently held that where an insurance company has no knowledge or indications of a *condition* concealed by a misrepresentation in an application, it is entitled to void the policy, but where it knows the facts, knows the falsity of the statements on the application, or has "sufficient indications that would put a prudent person on notice so as to induce an inquiry which, if done with reasonable thoroughness, would reveal the truth," a question of fact is presented as to whether the insurer is entitled to void the policy.

*Duren v. Northwestern National Life Insurance Co.*, 581 So. 2d 810, 815-16 (Ala. 1991) (emphasis added) (citing *Reliance Insurance Co. v. Substation Products Corp.*, 404 So. 2d 598, 604 (Ala. 1981); *Bankers Life & Casualty Co. v. Long*, 345 So. 2d 1321, 1323 (Ala. 1977)).[21] In *Duren*, the

---

[19] Doc. no. 36, p. 14 (quoting *Duren v. Northwestern Nat. Life Ins. Co.* 581 So. 2d 810, 814 (Ala. 1991)).

[20] *Id.*

[21] In *Duren*, the applicant failed to reveal that he was being treated for lung cancer. His application noted that he been hospitalized for pneumonia. The applicant told the paramedical examiner that he was still under observation by his treating physician for pneumonia and that his treating physician had taken x-rays and a CAT scan during his treatment for pneumonia. The Alabama Supreme Court held that "[t]hese facts cannot be said to be 'sufficient

Alabama Supreme Court held that "sufficient indications" to induce an inquiry must be knowledge or indications of the concealed or omitted condition and that no duty to conduct an inquiry is created by mention of a condition "different in kind" from the condition concealed. *Id.* at 814-16 (citing, *e.g., Old Southern Life Insurance Co. v. Spann*, 472 So. 2d 987, 989-90 (Ala. 1985) (applicant revealed abdominal surgeries, but not psychiatric treatment)).

On the authority of *Duren*, this court finds that defendant's motion for summary judgment is due to be granted. The court finds, as a matter of law, that the disclosure by Mrs. Gaston of her hypertension, which she had stated was controlled by medication, is not "sufficient indication" to place defendant on "notice so as to induce an inquiry which, if done with reasonable thoroughness, would reveal the truth." *See Duren*, 581 So. 2d at 815-16. Therefore, the court finds no disputed issues of material fact and that defendant is entitled to judgment as a matter of law as to the plaintiff's breach-of-contract claim.

C.  **Bad Faith**

Alabama case law has defined four elements for a claim for an insurer's bad faith refusal to pay a valid insurance claim:

> 1) an insurance contract between the parties and a breach thereof by defendant, 2) an intentional refusal to pay the insured's claim, 3) the absence of any reasonably legitimate or arguable reason for that refusal, 4) the insurer's actual knowledge of the absence of any legitimate or arguable reason.

*Alfa Mut. Fire Ins. Co. v. Thomas*, 738 So. 2d 815, 822 (Ala. 1999) (citing *Blackburn v. Fidelity & Deposit Co. of Maryland*, 667 So. 2d 661, 667-68 (Ala. 1995); *National Sec. Fire & Cas. Co. v.*

---

indications' that he had cancer so as to constitute such notice as would prompt a prudent insurer to conduct further inquiries." *Id.* at 816. Chief Justice Hornsby and Justice Maddox filed a dissenting opinions, which stated that they believed the evidence supported a question of fact for the jury as to whether the indications were sufficient to impose a duty of inquiry on the insurer.

*Bowen*, 417 So. 2d 179, 183 (Ala. 1982)). Also, "[t]he plaintiff's contract claim is an important part of her bad-faith claim. In the 'normal' case, a plaintiff's bad-faith claim may not be submitted to the jury unless she shows that she is entitled to a directed verdict on the contract claim." *Thomas*, 738 So. 2d at 822 (citing *Blackburn*, 667 So. 2d at 668; *National Sav. Life Ins. Co. v. Dutton*, 419 So. 2d 1357, 1362 (Ala. 1982)).

The court notes that plaintiff contends his bad faith claim is based on "inappropriate underwriting procedures." Doc. no 36, at 21 (citing *American Life Insurance Co. v. Mattiace*, 679 So. 2d 229 (Ala. 1996). In *Mattiace*, the Supreme Court of Alabama held that the plaintiff had demonstrated that she was entitled to a directed verdict on the insurance contract because (a) the insurer had inconsistent underwriting standards, and (b) the insurer could not pick the standard, after a claim was made, that would support its decision to deny benefits. The court wrote:

> [I]f an insurer is allowed to intentionally create an atmosphere in its underwriting department where no standards are binding on its underwriters and when a claim for policy benefits is received an underwriter can pull off a shelf underwriting standards that are stricter than those that were used when the policy was issued, the insurer would be creating its own debatable reason for denying the claim. We cannot condone such action and let self-created uncertainty as to underwriting standards defeat a claim of bad faith where that uncertainty is the very basis of the allegation of bad faith. Thus we hold that [the insurer] cannot rely upon its chosen method of "subjective underwriting" to create its own legitimate reason for denying a claim .
> . . .

679 So. 2d at 238.

In this case, the facts regarding defendant's underwriting standards are not disputed. Defendant's written standards did not require an attending physician's statement when the applicant had a history of hypertension controlled by medication and a normal blood pressure reading during the paramedical examination. However, the same underwriting procedures required an attending

-11-

physician statement when the applicant noted a history of scleroderma. Defendant's underwriting standards for obtaining an attending physician's statement are certain and objective. Therefore, based on the record, the court finds that the "legitimate reason" for denying plaintiff's benefit claim was not its reliance on "subjective underwriting." *See id* at 238.

Considering the court's determination that defendant is entitled to summary judgment on plaintiff's breach of contract claim, the court finds that plaintiff's bad faith claim is due to be dismissed.

## IV. CONCLUSION

For the foregoing reasons, defendants's motion for summary judgment is due to be granted. An appropriate order consistent with this memorandum opnion will be entered contemporaneously herewith.

DONE this  10th  day of July, 2002.

_____
United States District Judge